# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed January 6, 1916.

STATE OF MARYLAND, TO THE USE OF MARGARET W. MONROE, SURVIVING WIFE, AND ALEXANDER S. MONROE, JR., INFANT SON OF ALEXANDER S. MONROE, DECEASED,

VS.

WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY, A BODY CORPORATE, AND THE CONSOLIDATED GAS ELECTRIC LIGHT AND POWER COMPANY, A BODY CORPORATE.

*Lee S. Meyer, Esq.,* and *Wallace Giffen* for plaintiff.

*George Weems Williams, Raymond S. Williams* and *E. M. Sturtevant* for defendants.

DAWKINS, J.—

It seems that the crux of the whole matter is upon whom rests the burden of showing knowledge or lack of knowledge of the apparatus being charged with the current which caused the death of Alexander Monroe. With this, of course, is involved the question of negligence, and the exercise of ordinary and proper care.

This young man (the deceased), an expert wireman of about 27 years of age, was employed on or about the construction work at the plant mentioned in the evidence for some weeks. He must have known all about it in a general way, so far as the building up of the transformers are concerned. All such construction is dangerous from its very nature. The defendant companies, as well as the deceased himself, placed certain signs in and about the plant while the work was in progress. These warnings Monroe saw, or should have seen. True, Sommers was the general superintendent, but as to the

work in hand at the time of the accident Monroe had charge with Ball. Any lack of safety devices was easily discovered by Monroe. The case must rest upon all the circumstances from which a fair and reasonable inference can be drawn as to knowledge.

There is no word alleged to have been uttered by Monroe showing that he knew that the current was on at the time of the accident. He knew the place was dangerous. Surely no act of his would indicate knowledge. He did probably know that the bar was dead at one time after the current was turned on. The employes of one of the defendants knew that the current was on, but there is no evidence to show that Monroe knew it.

The witness Ball, who was with Monroe at the time, said he could not tell what was in Monroe's mind, therefor, assuming the risk of the employment would not enable him to know when the current was to be turned on and expose him to a hidden danger.

The question was fairly and properly one to be submitted to the jury by eliminating all questions but the one alleged in the first count of the declaration as to knowledge of the current being turned in the transformers. If it could be shown that the plaintiff had knowledge that the current was on continuously, or at the time of the accident, the cases cited would apply, but the only actual knowledge shown as possessed by Monroe as to the current being on was on the Sunday before the accident.

The cases cited, such as 102 Md., Byrnes, and 65 Md., Neal, do not deal with facts such as those in the case before us. There can be no doubt as to the necessity for the plaintiff to prove that the injury was caused by mismanagement of the defendant, or by the want of ordinary care on the part of the defendant in placing him in a place of danger to work, without cautioning him as to the danger. There is proof in this case tending to show that the current was on through the agencies of one of the defendant companies. There is proof tending to show that the other defendant put the man to work without any cautioning as to danger. There is no proof that Monroe knew that the current was on when he went to this work. Dangerous places in which to work do not mean that a current controlled by some one outside of that particular place would be knowledge on the part of the worker that it was on in the place he was working. The inference proper to be drawn of lack of knowledge is as reasonable as the fact that a board being placed with certain lettering on it was knowledge that the current was passing.

The principle of fellow-servant suggested in some of the cases cited could surely not apply in this case. It has been argued that there was error in refusing to let the witness Ball answer the question as to what Monroe may have said. Even if this were sound, in view of the testimony of Ball, it has worked no injury to the defendants, because he (Ball) subsequently said, "I can not recollect that I did any more than man to man—we talked the work over together," and again he answered to another question, "I can not speak his mind in regard to that * * * but I can not recall any words whatever that he said. It is impossible for me to recall his words," thus showing that the witness not only in effect answered the question, but he could not have given any information as to any utterances of or to Monroe.

In reference to the statements of counsel in the course of the argument as to boxing after the accident, the record is incomplete. The Court has a recollection that the statement was made in the course of an argument as to the admissibility of certain testimony. Counsel was stopped as soon as the statement was made. I can not believe that any effect was had upon the jury, however injudicious it might have been to have made such a remark.

The only remaining question to be considered is that of excessive damages.

The testimony shows that the deceased and his wife were each about 27 years of age, with an expectancy of about 37½ years each. The deceased was earning from about $20 to $35 per week in his various employments. I don't think we should speculate as to his advancement in business or the investment of the money recovered, any more than upon his added family obligations, bad health, etc. We should consider what he was earning and his likely time to live. To pay the wife even two hundred and seventy dollars per year would take $10,000. This

would be less than one-third of what the husband was earning at the lowest wage. So the verdict would not be excessive in amount as to her.

In the case of the child, who is entitled to support say until he is twenty-one years of age, the verdict would seem to be unduly large, based upon the father's earnings. An average allowance say of about one hundred and seventy-five dollars per year, covering the period mentioned, with a little larger amount for the later years before reaching his maturity, would be about fair. This would make, say, $4,000.

The case was properly submitted to the jury. If the plaintiff elects to accept a *remittitur* of $2,000 as to the verdict in favor of Alexander S. Monroe, Jr., then the motion will be overruled; if he does not elect to accept said reduction, then the motion will be granted, provided, however, that should the plaintiff so elect the defendants must waive their right to appeal if they accept the election. If the defendants do not accept such election, and so waive their right to appeal, then the plaintiffs may withdraw the election, if made, and the motion will be overruled. The election, waiver and acceptance to be made on or before January 8, 1916.